UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD RAYTJUAN HEMPHILL,

    Plaintiff,


v.                                                    Case No. 16-13990


ALLSTATE INSURANCE COMPANY,          HON. AVERN COHN

    Defendant.



_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 20)**

### I.   INTRODUCTION

      This is a no-fault personal insurance protection (PIP) benefits case removed from the Wayne County Circuit Court. Plaintiff Richard Hemphill (Hemphill) is suing Defendant Allstate Insurance Company (Allstate) for benefits related to injuries he sustained in a car accident. Hemphill's complaint (Doc. 1) is in two counts:

    Count I: Breach of Contract

    Count II: Declaratory and Injunctive Relief

Hemphill asks for compensatory damages, interest, costs, and attorney fees, as well as an injunction preventing Allstate from denying him no-fault benefits.

Now before the Court is Allstate's motion for partial summary judgment on the grounds of fraud (Doc. 20), to which Hemphill has responded (Doc. 17) and Allstate has replied (Doc. 19). For the reasons that follow, the motion is GRANTED and Hemphill's claim for no-fault PIP benefits is DISMISSED. Though Allstate's motion is for partial summary judgment, this ruling disposes of the case.

## II. BACKGROUND

### A.

On September 30, 2015, Hemphill was riding in the back seat of his friend Devon Cartwright's (Cartwright) car. Cartwright was driving; his girlfriend was sitting in the front passenger seat. Cartwright lost control of the car while on the highway, weaving back and forth and eventually striking the median. Soon after, Hemphill was transported by ambulance to Henry Ford Hospital in Detroit.

Hospital records (Doc. 16, Ex. C) state that Hemphill denied losing consciousness or hitting his head or neck in the accident. The records also state that Hemphill did not exhibit back pain, arthralgias (joint pain), neck pain, neck stiffness, dizziness, or headaches, but did exhibit lacerations on three fingers, tenderness in the right shoulder, myalgias (muscle pain), and some blood abnormalities. Hemphill complained of "pain to the right shoulder and right hand." An x-ray taken of his right shoulder displayed "a slight irregularity of the distal acromion, which is new from prior radiographs in [May of 2015]. On repeat exam, patient reports no tenderness at this site point . . . and when offered a sling, refused it." An x-ray taken of his right hand was "unremarkable."

Hemphill's right hand was wrapped and he was given a prescription for Motrin. Hospital records state that "[p]atient left AMA, reporting that he felt fine and wanted to go, refusing monitoring and serial abdominal exams."

**B.**

On November 3, 2015, Hemphill signed an application for PIP benefits through the Michigan Assigned Claims Plan (MACP).[1] In the application he made the following statements:

1. He suffered injuries to his neck, back, head, right arm, knees, and hands;
2. He received treatment for his injuries at Henry Ford Hospital and also from Dr. Sam Hakki (Dr. Hakki);
3. Dr. Hakki was his primary care physician;
4. Medicare was his only form of health insurance;
5. He had no pre-existing health conditions (except that he was taking medications for schizophrenia and bipolar disorder);
6. He received medical bills regarding injuries sustained in the accident;
7. He was not "contacted by a doctor's office or other person about this claim;" and
8. He prepared the application himself.

(Doc. 16, Ex. D).

In the PIP application, Hemphill also stated that neither he nor any relative residing in his home owned any cars on the date of the accident, that he did not have

---

[1] The Michigan Assigned Claims Plan is a means through which an uninsured individual injured in a car accident may obtain PIP benefits. See M.C.L. § 500.3171 et seq.

car insurance, and that the driver of the car involved in the accident did not have car insurance. As a result, the MACP assigned Hemphill an insurer through the Michigan Automobile Insurance Placement Facility.[2]

**C.**

The claim was assigned to Allstate, which sent a representative to meet with Hemphill at his lawyer's office on February 20, 2016. The claim representative's interview notes state in relevant part that:

1. Hemphill says he suffered injuries to his right hand, right thigh, neck, right shoulder, and lower back;

2. Hemphill was treated by Dr. Hakki who worked at Orthopedics, PC (Orthopedics), Kinetics Physical Therapy, PC (Kinetics), and Rose Physical Therapy (Rose). Hemphill attended two sessions at Kinetics but later switched to Rose, to which he was referred by a friend. Rose then referred him to Orthopedics. Hemphill saw Dr. Hakki at Orthopedics "on one occasion" but also "has been seeing Dr. Hakki for medical evaluations and anticipates going there once a month to continue follow-up treatment";

3. Hemphill was covered by both Medicaid and Medicare at the time of the interview;

4. Hemphill had pre-existing lower back and shoulder problems;

---

[2] The Michigan Automobile Insurance Placement Facility is the entity that assigns PIP claims to insurers. See M.C.L. § 500.3171 *et seq.*

5. Hemphill was "confronted by two male individuals who arrived at his home [and] advised him that he needed a medical evaluation because of his injuries and recommended that he go to Kinetics Physical Therapy."

(Doc. 17, Ex. 4). The notes do not contain information regarding Hemphill's primary care physician, whether Hemphill received medical bills, or who prepared the PIP application.

## D.

In his deposition, Hemphill testified to the following regarding the statements recounted above, pp. 2-3 *supra*:

1. He hit his head during the accident, and immediately after the accident he experienced head "ringing" and hand, neck, head, right shoulder, leg, and lower back pain, and could barely walk. He told hospital staff that he was experiencing head, neck, and back pain. He told hospital staff he was "fine and wanted to go" only because they told him they could not do anything for him because he had no health insurance. The hospital staff did not offer him a sling for his shoulder;

2. He was treated by Dr. Hakki once at a location he did not remember. Starting a few days after the accident he attended physical therapy at an unknown location for two weeks until he switched to Rose. His girlfriend's mother told him about Rose and Dr. Sawka wrote him a prescription to go there. Before attending Rose, he attended Orthopedics, which "somebody" (possibly his girlfriend's mother) told him about. He made no mention of Kinetics;

3. His primary care doctor is Dr. Sawka, who he has been seeing for his whole life;

4. He was covered by Medicaid and Medicare, both of which went into effect in November 2015. He told Rose he had "health insurance" (did not specify which) at the beginning of his treatment there in October 2015;

5. He received prior medical treatment for his shoulder, including treatment with Dr. Sawka in August 2015 for a right shoulder tear. Prior to the accident, he was taking his grandfather's Norco for right shoulder pain;

6. He did not receive any medical bills for injuries regarding the accident (when asked why he indicated on the application that he had received medical bills, he answered "I don't know");

7. Someone solicited him for physical therapy treatment soon after the accident and told him he could get money for his injuries. He did not view this as being contacted regarding his PIP "claim";

8. A staff member at his lawyer's office completed the PIP application on his behalf. His lawyer said this during the deposition; Hemphill agreed. When asked why he did not notice that his social security number was written incorrectly in the application, he answered "I guess I was like skimming through it and I didn't read it."

(Doc. 16, Ex. B).

### III. LEGAL STANDARD

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 101-02 (6th Cir. 1995).

## IV. APPLICABLE LAW

The Michigan Insurance Code provides in relevant part:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under section 4503 that is subject to the penalties imposed under section 4511. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan.

Mich. Comp. Laws § 500.3173a(2). The provision regarding fraudulent insurance acts reads as follows:

> A fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive:
> . . .
> (c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim.

Mich. Comp. Laws § 500.4503(c).

## V. ANALYSIS

### A.

Hemphill first argues that since the general definition of a fraudulent insurance act in M.C.L. § 500.4503(c) requires an intent to defraud, Allstate must also show intent to defraud to establish a violation of M.C.L. § 500.3173a(2). Hemphill is incorrect since section 500.3173a(2) provides that a fraudulent insurance act occurs if a person knowingly submits false information in an application for benefits. See Candler v. Farm Bureau Mut. Ins. Co. of Michigan, No. 332998, 2017 WL 4798266, at *3 (Mich. Ct. App. Oct. 24, 2017) (listing elements of a fraudulent insurance act under M.C.L. § 500.3173a(2)). Thus, the Court must only decide whether the evidence shows that Hemphill undisputedly knew that he provided false information in his PIP application.

**B.**

Allstate says that the statements at pp. 2-3 *supra* were false. Regarding the second statement, Allstate says that although Hemphill said he received treatment from Kinetics, Rose, and Orthopedics, Allstate has received medical bills for Hemphill from the following providers:

> Kinetics Physical Therapy, Crystal Clear Health Management, Tox Testing, Max Rehab, Total Toxicology, Southfield Pain Management, Mercy Transportation, Infiniti Labs, Accu Reference Lab, Bluebird Transportation, Greater Lakes ASC, Meds Direct Pharmacy, Orthopedic P.C., and Rose Physical Therapy.

(Doc. 20).

For other statements by Hemphill, Allstate points to his deposition testimony to establish that he made false statements in his PIP application. Hemphill says that any mistakes in his PIP application were "honest," "minor," and not material to his claim. He also says that his disclosures at the claim interview, as well as his deposition testimony and interrogatory answers, serve to "supplement" and "correct" his PIP application.

**C.**

While some of the statements in Hemphill's PIP application were of debatable veracity, it is clear that others were plainly false. For example, Hemphill indicated that Dr. Hakki was his primary care physician but later testified that Dr. Sawka had been his primary care physician for many years. Hemphill said he had no pre-existing health conditions except mental illnesses but later testified that he had received shoulder treatments in the past. Hemphill said he had received medical bills but later testified that he did not. Hemphill said he prepared the application himself; he later testified that his lawyer prepared it for him. Also written incorrectly on the application was Hemphill's social security number.

Most of these false statements were material to Hemphill's PIP claim. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." Mina v. Gen. Star Indem. Co., 218 Mich. App. 678, 686 (1996), rev'd in part, 455 Mich. 866 (1997) (citing Dadurian v. Underwriters at Lloyd's, London, 787 F.2d 756, 759-60 (1st Cir. 1986)). While the identity of the application preparer may be less relevant, Allstate asked for Hemphill's social security number, health history, the identity of his primary care physician, and whether he had received medical bills. This information was material to an accurate assessment the nature of Hemphill's injuries and the amount of benefits he was entitled to.

Finally, there is no doubt that Hemphill made the false statements knowingly. Though a third party apparently prepared the PIP application, Hemphill testified that he had the opportunity to review it. The fact that he was "skimming through it" and "didn't read it" does not absolve him from liability for making false statements. Though M.C.L. § 500.3173a does not define the term "knowing," the Michigan Court of Appeals has held

9

that "[t]he truth or falsity of a representation on an insurance policy should be examined in the light of what the applicant knew *or had reason to know* at the time of his application." Lipsky v. Washington Nat. Ins. Co., 7 Mich. App. 632, 638 (1967) (emphasis added). Michigan courts have also held that fraud in general can be perpetrated by knowing or reckless actions. See Webb v. First of Michigan Corp., 195 Mich. App. 470, 473 (1992); McCartha v. State Farm Fire & Cas. Co., No. 326689, 2016 WL 4375659, at *8 (Mich. Ct. App. Aug. 16, 2016), appeal denied, 500 Mich. 947 (2017), reconsideration denied, 500 Mich. 1005 (2017). Hemphill knew who his primary care physician was, whether he had pre-existing conditions, whether he had received medical bills, and his correct social security number.

## VI. CONCLUSION

Hemphill's deposition testimony and interrogatory answers do not "correct" his PIP application; on the contrary, any discrepancies between his application and later testimony bolster the fact that the statements made in the application were not true. While Hemphill may have had the opportunity to correct minor mistakes during his claim interview, he by no means corrected the misstatements.

Under M.C.L. § 500.3173a(2), Hemphill is not entitled to PIP benefits and Allstate is entitled to summary judgment as to his claim.


SO ORDERED.

                                      s/Avern Cohn
                                      AVERN COHN
                                       UNITED STATES DISTRICT JUDGE

Dated: April 10, 2018
Detroit, Michigan